**UNITED STATES of America, Plaintiff,**

**v.**

**Thomas B. RUTH, Defendant.**

**Crim. A. Nos. 89–20080–02, 91–3087–O.**

United States District Court,
D. Kansas.

June 10, 1991.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter comes before the court on the motion of defendant Thomas B. Ruth (hereinafter "Ruth") to vacate, set aside or correct his sentence. The files and records in this case disclose that Ruth, after conferring with his attorney, Robert E. Jenkins (hereinafter "Jenkins"), entered pleas of guilty on November, 30, 1989, to conspiring to distribute cocaine (Count I) and using or carrying a firearm during the distribution of cocaine (Count V). He was sentenced in February of 1990 to five years of imprisonment for taking part in the conspiracy and an additional five years to run consecutively for carrying the firearm. Ruth also received a three-year term of supervised release, a fine of $12,000.00, and a special assessment of $100.00. Defense counsel filed a notice of appeal on May 30, 1990. The Tenth Circuit, however, dismissed the appeal because the notice of appeal was filed late.[1]

Defendant has filed his present petition pursuant to 28 U.S.C. § 2255.[2] He claims that he was rendered ineffective assistance of counsel because Jenkins failed to explain the mandatory sentencing effect of pleading guilty to carrying a firearm during the commission of a drug offense. He also asserts that Jenkins failed but should have objected to inaccuracies in the presentence report and the imposition of a fine. In addition, Ruth contends that Jenkins' failure to file a timely notice of appeal violated his right to the assistance of an attorney. For the reasons stated below, the court will sustain defendant's motion on the sole ground that defense counsel's failure to file a timely notice of appeal constituted ineffective assistance of counsel. The oth-

Julie A. Robinson, Asst. U.S. Atty., for plaintiff.

Robert E. Jenkins, Kansas City, Kan., Carol A. Coe, Kansas City, Mo., for defendant.

---

**1.** Notice of appeal was filed on behalf of Ruth more than three months after the entry of judgment. Rule 4(b)(i) of the Federal Rules of Appellate Procedure provides in pertinent part that "notice of appeal by a defendant shall be filed within ten days after the entry of ... the judgment or order appealed from" in a criminal case. The time periods set forth in Fed.R.App.P. 4 are both "mandatory and jurisdictional." *Browder v. Director, Dep't of Corrections,* 434 U.S. 257, 264, 98 S.Ct. 556, 561, 54 L.Ed.2d 521

(1978) (quoting *United States v. Robinson,* 361 U.S. 220, 229, 80 S.Ct. 282, 288, 4 L.Ed.2d 259 (1960)).

**2.** Section 2255 of Title 28, United States Code, permits a "prisoner in custody ... claiming the right to be released [to] move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255.

er grounds urged are found to be without merit.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL STANDARDS

The Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." In criminal prosecutions, "the right to counsel is the right to effective assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970); *McGee v. Crist,* 739 F.2d 505, 506 (10th Cir.1984). The Sixth Amendment guarantee of effective assistance of counsel "demands that defense counsel exercise the skill, judgment and diligence of a reasonably competent defense attorney." *Dyer v. Crisp,* 613 F.2d 275, 278 (10th Cir.) (en banc), *cert. denied,* 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980).

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court considered the standard for determining whether counsel's legal assistance to his client was so inadequate that it effectively deprived the client of the protections guaranteed by the Sixth Amendment. In passing on such claims of "actual ineffectiveness," the " 'benchmark ... must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Perry v. Leeke,* 488 U.S. 272, 279, 109 S.Ct. 594, 599, 102 L.Ed.2d 624 (1989) (quoting *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)); *United States v. Rivera,* 900 F.2d 1462, 1472 (10th Cir.1990) (quoting *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)).

A two-part test was established by the Court in *Strickland* to determine whether "counsel's conduct undermined the proper functioning of the adversarial process." In order for a defendant to establish that his or her attorney's assistance was ineffective, the defendant must show that defense counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland, supra,* 466 U.S. at 687, 104 S.Ct. at 2064; *United States v. Jimenez,* 928 F.2d 356, 361–62 (10th Cir. 1991); *United States v. Rhodes,* 913 F.2d 839, 844 (10th Cir.1990), *cert. denied,* ⎯ U.S. ⎯, 111 S.Ct. 1079, 112 L.Ed.2d 1184 (1991).[3]

■ In the context of a guilty plea, the defendant satisfies the first prong of the *Strickland* test if he proves that counsel's "advice was not within the wide range of competence demanded of attorneys in criminal cases." *Bailey v. Cowley,* 914 F.2d 1438, 1440 (10th Cir.1990) (quoting *Laycock v. New Mexico,* 880 F.2d 1184, 1187 (10th Cir.1989)). The proper standard for measuring attorney performance is reasonably effective assistance. *Id.* The second prong is met if the defendant shows that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *United States v. Jimenez, supra,* 928 F.2d at 362; *United States v. Rhodes, supra,* 913 F.2d at 844. In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the trial judge. *United States v. Espinosa,* 771 F.2d 1382, 1411 (10th Cir.1985), *cert. denied,* 474 U.S. 1023, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985).

We must also consider the Supreme Court's directive that " '[j]udicial scrutiny of counsel's performance [must] be highly deferential,' and that 'every effort must be made to eliminate the distorting effects of hindsight.' " *United States v. Hall,* 843 F.2d 408, 413 (10th Cir.1988) (quoting *Strickland v. Washington,* 466 U.S. 668,

---

**3.** Prejudice is shown "by demonstrating that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986); *United States v. Pena,* 920 F.2d 1509, 1519 (10th Cir.1990),

*cert. denied,* ⎯ U.S. ⎯, 111 S.Ct. 2802, 115 L.Ed.2d 975 (1991). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *United States v. Pena, supra,* 920 F.2d at 1519 (quoting *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984)).

689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984)). In light of the inherent difficulties in evaluating the effectiveness of legal assistance rendered by an attorney, a court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Taylor*, 832 F.2d 1187, 1194 (10th Cir.1987) (citations omitted). In other words, the defendant must overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.; United States v. Espinosa, supra*, 771 F.2d at 1411.

## II. GUILTY PLEA AS TO CARRYING FIREARM DURING COMMISSION OF FELONY

 As noted above, defendant entered a plea of guilty to the charge of using or carrying a firearm during the commission of a drug offense. Ruth claims that Jenkins did not adequately explain that he would receive a mandatory sentence of five years of imprisonment for the firearm offense. The petitioner alleges that he was led to believe that he would receive a two-level enhancement for carrying the firearm. He also states that Jenkins warned him that the government would recommend a twenty-year sentence if he did not enter into the plea agreement.

Ruth acknowledged in paragraph 10 of his Petition to Plead Guilty that his lawyer informed him that "the plea of 'GUILTY' could subject [him] to a maximum punishment which, as provided by law, is *5–40 [and] 5 years* of imprisonment and a fine of *$2,000,000.*" Jenkins states in his affidavit that he "fully explained" the sentencing consequences of pleading guilty to the conspiracy and firearm offenses to Ruth before his client agreed to plead guilty. Jenkins adds that "I explained to [Ruth] that a conviction [for carrying the firearm] carried a five year consecutive sentence and that this was a mandatory sentence. I further advised him if he didn't plead, the Government would recommend a twenty-year sentence." We find Jenkins' version of the facts more credible. If Ruth believed that his sentence would be enhanced

by two levels and would not result in a five-year term of imprisonment, he should have expressed his confusion at the time of his plea hearing.

During the plea hearing, the court advised Ruth of the penalties for both crimes. Several times during the hearing, the court and counsel discussed the penalties in the presence of Ruth:

> THE COURT: .... conspiracy count. And that carries a penalty of ... up to two million dollars and not less than five nor more than forty years?
>
> JENKINS: That is correct, Judge.
>
> THE COURT: And on Count 5, that carries a penalty up to five years; is that correct?
>
> JENKINS: Yes, Your Honor.
>
> THE COURT: What is the fine on that? Is there a fine on that, Ms. Robinson?
>
> ROBINSON: On the conspiracy, Your Honor, I believe its two million dollars.
>
> THE COURT: I meant on the gun charge.
>
> ROBINSON: Oh, there's no fine.

Several minutes later, the court discussed the penalties with the defendant:

> THE COURT: You also realize that even though you enter pleas of guilty to these two charges, the Court may still impose the same punishment, just as if you had pleaded not guilty, stood trial and been convicted by a jury?
>
> RUTH: Yes, Your Honor.
>
> THE COURT: Now, in regard to Count I, that's the conspiracy charge, the Court informs you that the statute provides that the maximum penalty in that—on that charge is a fine up to two million dollars and a term of imprisonment of not less than five years nor more than forty years. And on the gun charge, which is Count V, that the maximum penalty is a term of five years. And, as I recall, that is a consecutive penalty, isn't it?
>
> JENKINS: It is, Your Honor.
>
> THE COURT: Yes. Do you understand that these are the maximum penalties provided by the law?
>
> DEFENDANT: Yes, Your Honor.

Ruth acknowledged he understood that the gun count carried a consecutive penalty and even though the five-year term of imprisonment was characterized as maximum rather than mandatory, at the same time defendant admitted that he understood that he could be imprisoned for as many as forty years for his participation in the conspiracy. Ruth also stated that he realized he could potentially serve a sentence of imprisonment for up to forty-five years.

When Jenkins discussed the guideline range for the firearm offense with the court, Ruth did not communicate or show any signs of confusion or misunderstanding as to the sentence the court could impose upon him:

> JENKINS: ... We are in complete agreement with regard to what the guidelines range is. We discussed this and rediscussed this and went over this a long time, Judge, before he made up his mind with regard to what he was going to do in this case. The only thing is, and I know that this is what the guidelines say and what the law is. The minimum guidelines for his sentence in this case are fifty-one months to sixty-three months on the distribution case, the conspiracy case, and an additional five years for the firearm that was found in this particular case. The firearm, in this case, we contend, was found in the home of where the defendant lived, but be that as it may, this is a tough law, Judge, as the Court well knows, that in order for him to be sentenced, *you have to tack on five years to the minimum sentence which he gets under the initial count.*

The mandatory five-year term of imprisonment is also contained in paragraph twenty of the presentence report. Jenkins states in his affidavit that he and Ruth reviewed

the presentence report. Jenkins' statement is further corroborated by Ruth's present claim that the presentence report was not accurate.

Ruth stated in paragraph eighteen of his Petition to Plead Guilty that he believed his attorney "has done all that anyone could do to counsel and assist me, AND I AM SATISFIED WITH THE ADVICE AND HELP HE HAS GIVEN ME." [4] The petitioner also indicated that he was "satisfied with the advice and services that Mr. Jenkins [had] given [him]." The truth and accuracy of Ruth's statements are regarded as conclusive in the absence of a valid, believable reason justifying departure from their apparent truth. *United States v. Bambulas,* 571 F.2d 525, 526 (10th Cir.1978) (citing *Hedman v. United States,* 527 F.2d 20, 22 (10th Cir.1975)); *United States v. Clark,* 429 F.Supp. 89, 95 (W.D.Okla.1976) (quoting *Hedman v. United States,* 527 F.2d 20, 22 (10th Cir.1975)). The petitioner's allegations of lack of effective assistance of counsel are completely and conclusively refuted by his earlier statements at the Rule 11 proceedings.[5]

We conclude that Jenkins' advice to his client as to the mandatory five-year term of imprisonment for the firearm offense "was within the wide range of competence demanded of attorneys in criminal cases." Jenkins "fully explained" the sentencing consequences of pleading guilty to both the conspiracy and firearm offenses to Ruth before the guilty pleas were entered. At the hearing, defense counsel also stated in the presence of his client that the court would "have to tack on five years to the minimum sentence which he gets under the initial count." The court will deny Ruth's claim of ineffective assistance as to the firearm offense.[6]

---

**4.** In paragraph six of his Petition to Plead Guilty, Ruth acknowledged that his lawyer "counseled and advised" him "on the nature of each charge, on all lesser included charges, and on all possible defenses" that he might have in this case.

**5.** Rule 11 of the Federal Rules of Criminal Procedure governs the entry of pleas of not guilty, guilty, and nolo contendere. Rule 11 also contains the plea agreement procedure.

**6.** We note there is no indication whatsoever that the results in this case would have been any different even if defense counsel had explained the consequences of pleading guilty to count V to the petitioner's satisfaction. Assuming that the petitioner decided to stand trial, the government appears to have had ample evidence that Ruth possessed a handgun at the time he committed the drug offense.

## III. ALLEGED INACCURACIES IN THE PRESENTENCE REPORT

Ruth claims that the failure of his attorney to object to inaccuracies in the presentence report constitutes ineffective assistance of counsel.[7] More specifically, the petitioner argues that Jenkins should have "vigorously" objected to a statement in the presentence report that there was a firearm in his possession at the time of his arrest.[8] The presentence report was in fact internally inconsistent. In the eleventh paragraph, the report indicates that a .38 caliber Smith & Wesson was seized from the petitioner's car on October 2, 1990, the date of his arrest. Paragraph thirteen states that the handgun was recovered in the living room of Ruth's apartment.[9]

A petitioner must establish under the first prong of the *Strickland* test that the performance of his or her attorney was deficient. Ruth's attorney, Jenkins, indicated at the time of sentencing that he and his client reviewed the presentence report and discussed the contents of the report. Jenkins also addressed the inaccuracy of the presentence report at the sentencing hearing. He stated to the court that "[t]he firearm in this case, we contend, was found in the home of where the defendant lived." Having articulated his client's position as to the inconsistency of the pretrial report, Jenkins' performance was by no means deficient. It is clear from defense counsel's contention as to the place in which the handgun was discovered that he thoroughly reviewed the presentence report, discussed the inaccuracy with his client, and reported the position of his client to the court. Such conduct is certainly commensurate with the "skill, judgment and diligence [demanded] of a reasonably competent defense attorney."

In order to satisfy the second prong of the *Strickland* test, a petitioner must prove that he or she was prejudiced by the conduct of defense counsel. *Strickland, supra,* 466 U.S. at 687, 104 S.Ct. at 2064; *United States v. Jimenez, supra,* 928 F.2d at 361–62. In the context of an attorney's alleged failure to object to inaccuracies in the presentence report, the petitioner must prove that he or she was prejudiced by the sentencing judge's reliance on erroneous information. *See, e.g., Grady v. United States,* 929 F.2d 468, 471 (9th Cir.1990) (any misstatements in presentence report were not prejudicial because they were not basis of sentence received); *United States*

---

7. Similar arguments alleging the failure of counsel to discover or object to misstatements and errors in a presentence report have failed to survive judicial scrutiny. *See, e.g. Lusk v. Dugger,* 890 F.2d 332, 339–40 (11th Cir.1989) (alleged inaccuracies in presentence report were insignificant and fell far short of demonstrating ineffective assistance of counsel), *cert. denied,* — U.S. —, 110 S.Ct. 3297, 111 L.Ed.2d 805 (1990); *United States v. Fry,* 831 F.2d 664, 669 (6th Cir.1987) (defendant did not receive ineffective assistance of counsel on basis of counsel's presentation at sentencing hearing with respect to alleged factual inaccuracies in presentence report); *United States v. Fulford,* 825 F.2d 3, 10 (3d Cir.1987) (failure of petitioner's counsel to notify authorities of corrections in presentence report did not entitle petitioner to postconviction relief on grounds of ineffective assistance of counsel); *Inzone v. United States,* 707 F.Supp. 107, 110–11 (E.D.N.Y.1989) (defendant failed to establish ineffective assistance of counsel with regard to presentence report).

8. Ruth admitted in paragraph sixteen of his Petition to Plead Guilty that he understood a U.S. Probation Officer would be assigned "to conduct a thorough presentence investigation to develop all relevant facts" concerning his case.

9. Petitioner now denies that he used a firearm during the commission of the drug trafficking offense. Ruth's denial is directly contrary to the representations of the petitioner as well as those of his attorney at the sentencing hearing. At the hearing, Jenkins stated that his client "wanted me to say on his behalf ... there is no doubt about the gun being in the car when the transaction occurred, but he wasn't arrested with the gun ..." Jenkins added that Ruth was "not disputing the fact that there was a gun in the car when the transaction went down." After hearing the evidence that the government would introduce at trial, Ruth acknowledged that he was satisfied that "the government could prove each of these elements of the offense" and convict him. As noted above, the truth and accuracy of a petitioner's statements at the hearing in which he or she enters a plea are regarded as conclusive in the absence of a valid, believable reason justifying departure from their apparent truth. *United States v. Bambulas, supra,* 571 F.2d at 526; *Hedman v. United States, supra,* 527 F.2d at 22.

*v. Slaughter*, 900 F.2d 1119, 1125 (7th Cir. 1990) (challenged portions of presentence report had no bearing on sentence imposed); *United States v. Kovic*, 830 F.2d 680, 686 (7th Cir.1987) (petitioner failed to prove sentencing judge relied on alleged inaccuracies in presentence report), *cert. denied*, 484 U.S. 1044, 108 S.Ct. 778, 98 L.Ed.2d 864 (1988); *Johnson v. United States*, 805 F.2d 1284, 1290 (7th Cir.1986) (alleged ineffective assistance of counsel not prejudicial because sentencing judge did not rely on allegedly false information in presentence report).

In the present case, the location in which the gun was discovered was immaterial to the sentence received by Ruth. Ruth was charged under 18 U.S.C. § 924(c) with carrying or using a weapon during a drug trafficking transaction.[10] He was not charged with possession of the weapon and he did not receive a two-level enhancement for possession of the gun. Further, the court did not rely on any of the statements that Ruth claims were inaccurate in determining his sentence. Defendant has failed to satisfy either component of the *Strickland* test. Accordingly, the petitioner's motion to set aside his sentence on the ground that his attorney failed to object to misstatements in the presentence report will be denied by the court.

## IV. FAILURE TO OBJECT TO THE IMPOSITION OF A FINE

■ As noted above, the court fined Ruth $12,000.00 on the conspiracy charge. As a special condition of the petitioner's supervised release, the court directed Ruth to "begin making fine payments during [his] incarceration" and to "pay the balance ... during [his] term of supervised release." Ruth claims that Jenkins should have objected to the imposition of the fine because he would be unable to pay it due to his limited education and employment prospects upon release. In Jenkins' affidavit, he states that he discussed the imposition of a fine with his client and Ruth was concerned that he would have to pay the fine while he was serving his term of imprisonment. Jenkins adds that he assured the petitioner that the fine would not have to be paid until he completed his prison sentence and was on supervised release.

When Ruth entered his guilty plea, the court informed him that he could be fined up to two million dollars. The petitioner's presentence report stated that he was capable of paying a fine in the range of $5,000.00 to $15,000.00 based on his net worth and employment history and prospects. Given Ruth's objections to inaccuracies in the presentence report, there is no question that he read the report. If the petitioner had any reservations about pleading guilty to a crime for which he could be fined, he should have voiced his concerns at or before the hearing in which the court accepted his plea of guilty. His failure to object to the imposition of a fine at the sentencing hearing suggests that he was satisfied with his attorney's assurance that any fine could be paid after he was released from prison.

There is no indication that the advice rendered by Jenkins to his client was deficient. Jenkins made a tactical and strate-

---

**10.** In order to obtain a conviction under 18 U.S.C. § 924(c), the government need not prove that the firearm was fired, brandished, or even displayed during the drug trafficking offense. *United States v. Coburn*, 876 F.2d 372, 375, *reh'g denied*, 885 F.2d 870 (5th Cir.1989). Control of a gun, even if it is concealed, constitutes use in relation to the drug trafficking offense if the possession is "an integral part of the narcotics offense and facilitated that offense." *United States v. Meggett*, 875 F.2d 24, 29 (2d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 166, 107 L.Ed.2d 123 (1989). As then-Judge Kennedy noted in *United States v. Stewart*, 779 F.2d 538 (9th Cir. 1985), *cert. denied*, 484 U.S. 867, 108 S.Ct. 192, 98 L.Ed.2d 144 (1987):

If the firearm is within the possession or control of a person who commits an underlying crime as defined by the statute, and the circumstances of the case show that the firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or to intimidate others, whether or not such display or discharge in fact occurred, then there is a violation of the statute.

*Id.* at 540. *See also United States v. Brockington*, 849 F.2d 872, 876 (4th Cir.1988); *United States v. Matra*, 841 F.2d 837, 842–43 (8th Cir. 1988); *United States v. Spector*, 720 F.Supp. 890, 892 (D. Kansas 1989).

gic decision that his client's best interests would be served by pleading guilty, showing remorse, obtaining a reduction for acceptance of responsibility, and relying on the court to impose a minimal sentence. Further, had Jenkins objected to the imposition of a fine on grounds that his client would not be able to pay it, the court would not have been swayed in light of the recommendation in the presentence report stating otherwise. We find any argument that but for counsel's failure to object to the imposition of a fine, Ruth "would not have pleaded guilty and would have insisted on going to trial" totally without substance. The petitioner's ineffective assistance claim as to counsel's failure to object to the levy of a fine will be denied.

## V. FAILURE TO FILE A TIMELY NOTICE OF APPEAL

 The petitioner contends that he advised Jenkins after the sentencing hearing on February 26 that he wanted to appeal his sentence. Ruth adds that Jenkins thereafter led him to believe that he had filed the notice of appeal when in fact he had not filed it. In his affidavit, Jenkins concedes that his client expressed his desire to appeal, but, according to Jenkins, Ruth said Carol Coe (hereinafter "Coe") would be hired to represent him before the Tenth Circuit.[11] Jenkins states that he has had no further contact with Ruth or anyone on Ruth's behalf since February of 1990.

Every convicted person has a constitutional right to effective assistance of counsel for his or her first appeal of right. *Evitts v. Lucey*, 469 U.S. 387, 393–94, 105 S.Ct. 830, 834–35, 83 L.Ed.2d 821, *reh'g denied*, 470 U.S. 1065, 105 S.Ct. 1783, 84 L.Ed.2d 841 (1985); *Tapia v. Tansy*, 926 F.2d 1554, 1563 (10th Cir.1991). Counsel representing indigent persons on appeal must advise them of their right to appeal and perfect an appeal if that is their client's wish. *United States v. Winterhalder*, 724 F.2d 109, 111 (10th Cir.1983); *Jackson v. Turner*, 442 F.2d 1303, 1307 (10th Cir.1971). As noted above, a notice of appeal was not filed within the requisite

time period in the case at bar. Ruth's appeal was therefore dismissed by the Tenth Circuit. Jenkins had not been granted leave to withdraw as defendant's attorney. He therefore had a responsibility to make sure that the notice was filed in a timely manner regardless of whether he was to represent the petitioner on appeal.

It is well established that the failure of defense counsel to properly perfect an appeal from a criminal conviction constitutes ineffective assistance of counsel. *See, e.g., Rodriguez v. United States*, 395 U.S. 327, 330, 89 S.Ct. 1715, 1717, 23 L.Ed.2d 340 (1969); *Abels v. Kaiser*, 913 F.2d 821, 822–23 (10th Cir.1990). The United States concedes that the petitioner was rendered ineffective assistance of counsel on this ground. The government contends, however, that the proper remedy is not reversal of the conviction, but resentencing by the district court. We agree. In *Rodriguez v. United States, supra*, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340, the Supreme Court held that the petitioner was improperly denied his right to appeal and remanded the case "to the District Court where petitioner [was] resentenced so that he [could] perfect an appeal in the manner prescribed by the applicable rules." *Id.* at 330–32, 89 S.Ct. at 1717–18.

IT IS THEREFORE ORDERED that the motion of defendant to vacate, set aside or correct his sentence (Doc. No. 97) is hereby granted on the ground that the failure of defense counsel to file a notice of appeal in a timely manner constitutes ineffective assistance of counsel.

IT IS FURTHER ORDERED that defendant shall be resentenced in order to permit the filing of an appeal pursuant to the Federal Rules of Appellate Procedure. The government is directed to make the necessary arrangements for the return of the defendant so that he may be resentenced.

---

**11.** Coe represented the codefendant in this case, Joseph F. Ruth.